## *In re* STRENZ.

*(District Court, S. D. New York. June 28, 1881.)*

1. BANKRUPTCY—SALE OF STOCK.

A sale by a bankrupt trader of his stock, for its full value, in the absence of all fraudulent intent, cannot be impeached.

2. SAME—SAME—REV. ST. § 5129.

Such a sale cannot be attacked by an assignee in bankruptcy within six months afterwards, under section 5129 of the Revised Statutes.

3. SAME—SAME—REV. ST. SUBD. 9, § 5110.

Nor can it be attacked under subdivision 9, § 5110.

4. SAME—SAME.

Some time about May, 1876, the bankrupt bought a bill of goods of the creditor who now opposes his final discharge. These constituted all the goods in his store at the time of the sale hereinafter mentioned, of which the bankrupt was the owner, the other goods there, constituting about three-fourths of the whole, being consigned to him by the firm of Graham & Aitken, whose agent for the sale of goods he had been for some time, and from whom he received weekly wages. For a considerable time before the sale he had been in failing circumstances, but had been left undisturbed by his creditors. Under these circumstances, Graham & Aitken, to avoid complications with his creditors, bought, for its full value, what remained of this bill of goods, making the last partial payment about a year afterwards. The sale was free from secrecy, from haste, and from any intent to defraud or prefer creditors, to whom all but a small sum of the purchase money was paid. Neither at the time of the sale nor afterwards was the bankrupt indebted to the purchasers. *Held*, that the sale could not be impeached, and that the discharge must be granted.

In Bankruptcy.

*Birdseye, Cloyd & Bayliss*, for bankrupt.

*Armstrong & Briggs*, for creditors.

BROWN, D. J. Final hearing in opposition to discharge. Adolph Strenz was adjudicated a bankrupt on his own petition in August, 1878. In November, 1876, he was carrying on a small store in Brooklyn, mostly supplied with goods by consignment from Graham & Aitken, for whom he had been for some time selling as agent and accounting regularly for the proceeds. He received from them $10 per week for his own services and $8 for his wife's, who assisted in the store. He had bought of J. Berlin, the opposing creditor, about six months previous, a miscellaneous lot of goods, mostly "rubbish," as one witness called it, at 60 per cent. upon a list furnished of articles and prices, amounting to $2,605.94; but upon examination of the goods and list, items to the amount of $739.25 were found either missing or destroyed, so that 60 per cent. upon the residue made the bill less than $1,200. On November 15, 1876, Graham & Aitken bought out what then remained of this lot of goods, being, as the evidence shows, less than one-fourth part of the usual stock of the store, together with the fixtures, for the price of $1,200, which was the full value of the goods, all of which was paid by them during the year following, and all except a very small fraction paid out by Strenz to different creditors.

It is claimed that this sale to Graham & Aitken in November, 1876, was in violation of subdivision 9 of section 5110, as a transfer in contemplation of bankruptcy, and to prevent the property from coming to the hands of the assignee, or from distribution among the

creditors. The specifications charge also that the sale was designed to give a preference to Graham & Aitken; but this is not sustained by the proofs, which show that Strenz was not indebted to them either then or afterwards. Strenz was insolvent; he had been so for some time, but was not disturbed by his creditors. Graham & Aitken knew this, and the object of the purchase by them was to extricate themselves and their goods, which formed three-fourths of the stock, from any complications with his affairs. Ordinary prudence in business required them either to withdraw their goods, thus practically breaking up the store and turning Strenz out of employment, or else to buy him out and become the unquestioned owners of the whole stock. They chose the latter and bought him out, agreeing to pay, and subsequently paying, the full value of the goods. In the sale itself (and that is all that is here in question) I see nothing objectionable.

The purchase could not in my opinion have been impeached by an assignee in bankruptcy within six months afterwards, under section 5129. As respects the creditors of Strenz and his estate it was an advantageous sale. It was not wholly closed up until about a year after. There are no marks of secrecy, haste, or fraudulent intent about the transaction. The assignee in bankruptcy, if then procured, would have received the proceeds of the sale, or the greater part of them, which were still unpaid. The transaction did not lessen Strenz's estate, nor tend to defeat or embarrass proceedings in bankruptcy, nor to divert his effects from any assignee that might have been appointed. *Clark* v. *Iselin*, 10 Blatchf, 204, 208. It therefore involved no fraud upon the bankrupt act, and none was intended. If an insolvent trader can sell out his remaining stock for its full value, it is fortunate for him and for his estate; and in the absence of all fraudulent intent there is certainly no law against his doing so, any more than there is against his selling out by piecemeal. The only exception, if any, to be taken in such cases is to any preference or unequal distribution of the proceeds of sale. The proceeds in this instance were paid out to various creditors from time to time as received. But there was no design in selling out in this case to get money to prefer any particular creditor or to hinder any creditor in collecting his debt. Had the creditors put Strenz into bankruptcy in time, they might, perhaps, have avoided what preferences were thus made. But they could not have impeached the sale itself under section 5129; and the same language employed in subdivision 9 of section 5110 must receive the same construction, except as to the limitation of time, as to which

I express no opinion. The transaction appears from the proofs to have been a fair sale for a fair price, without fraud, without injury to the bankrupt's estate or to his creditors, and without prejudice to any proceedings in bankruptcy that might have been had.

The objections are therefore overruled and the discharge granted.